T.C. Memo. 1995-605


UNITED STATES TAX COURT


UNITED CIRCUITS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20548-94.      Filed December 26, 1995.


Gino Pulito, for petitioner.

John E. Budde, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined deficiencies of $68,587 and $33,638 in petitioner's 1989 and 1990 Federal income taxes, respectively, and accuracy related penalties of $9,386 and $55 under section 6662(a) for 1989 and 1990, respectively.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions by the parties, the only issues remaining for decision are whether petitioner is liable for the 1989 and 1990 accuracy related penalties for negligence and for a substantial understatement of income tax.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner had its principal place of business in Ohio at the time the petition was filed. During the years in issue, petitioner was in the business of manufacturing circuit boards.

United Circuits, Inc. (UCI), was owned by Frank Schubert (Schubert) and Gary Jump (Jump). Schubert, the president of UCI, was primarily responsible for overseeing the manufacturing process and ensuring that the waste produced from the manufacturing process was in compliance with Environmental Protection Agency standards. Schubert's education and prior work experience were in engineering.

Jump was the vice president and general manager of UCI. Jump had various responsibilities that included reviewing UCI financial information, making decisions about equipment purchases, and working with Schubert on manufacturing matters. Jump received a degree in marketing.

UCI employed Davidson Audit Company (DAC) to perform accounting functions and to prepare UCI's financial statements and tax returns. Eleanor Northcutt (Northcutt), an employee of

DAC, was responsible for the UCI account. Northcutt had been employed by DAC since 1965 and had handled the UCI account since UCI began business. Northcutt was a high school and a business school graduate. She took 32 to 48 hours of continuing education courses a year that were offered by the International Society of Public Accountants. Northcutt did not have a public accountant license. When Northcutt was presented with an accounting issue about which she was uncertain, she would research the issue herself and then make a decision as to how she felt the issue should be treated.

Every month, Jump took UCI ledgers and invoices to Northcutt. Northcutt would have her clerk prepare monthly financial statements for UCI based on the ledgers and invoices. Northcutt reviewed the monthly financial statements after the clerk completed them and before they were given to UCI.

Because the manufacturing processes used by UCI corroded its equipment, periodic replacement of the equipment was necessary. Prior to the years in issue, UCI purchased equipment outright and depreciated it for tax purposes.

During 1988, Jump was contacted by Equitable Lomas Leasing Corp. (Lomas), a company that offered leases on equipment that Jump was interested in purchasing. Lomas told Jump that there were tax advantages of leasing the equipment instead of purchasing it. Lomas advised Jump that, if the equipment lease were for a duration of at least 1 year, the lease would be

"legitimate".  Jump contacted Northcutt about the equipment
acquisitions, and they discussed the possibility of leasing the
equipment.  Jump specifically asked whether a 1-year lease was a
"legitimate" lease.  Northcutt researched the issue of lease
duration and told Jump that 1-year leases would not be a problem
as long as they had monthly payments and they were set up as
leases or intended as leases.

During 1989 and 1990, UCI acquired the equipment and made
payments as follows:

| Asset | 1989 Payments | 1990 Payments |
| --- | --- | --- |
| Voss level machine | $ 38,750 | $11,250 |
| Drill | 66,840 | 12,368 |
| Etcher | 26,220 | 26,221 |
| Filter press | 9,295 | |
| Air compressor | | 7,086 |
| Total | $141,105 | $56,925 |

The document that conveyed the Voss level machine equipment
to UCI consisted of a typed payment schedule on a form that had
the preprinted words "Purchase Order" on the top of the form.
The words "Lease Payments as Follows" were typed below "Purchase
Order".  The agreement required four payments of $5,000 and eight
payments of $3,750, for a total of $50,000, with a $1.00 buy out
option.  The agreement did not contain a provision for the return
of the equipment to the lessor.  The invoice was signed by Jump
and dated April 28, 1989.

The drill was conveyed on a Lomas form titled "Master
Equipment Lease Agreement".  The agreement consisted of a deposit

and advance payment of $32,736.16, followed by eight monthly payments of $5,684.04, for a total of $78,208, with a $1,000 buy out option at the end of the 8 months. UCI exercised the buy out option. The lease was signed by Schubert and dated June 27, 1989.

UCI was sent an invoice for the etcher by the supplier. The terms were 50 percent down and 50 percent net 30 days after shipment. UCI paid with two $26,220.50 checks dated November 9, 1989, and June 21, 1990, for a total of $52,441. The invoices did not contain a provision for the return of the equipment to the lessor or a buy out option. The checks were signed by Jump, and the invoice was dated October 17, 1989.

The filter press was acquired on a series of invoices from Jim's Plating Supply, Inc. There were a total of seven monthly invoices, each one requesting a payment of $1,168.13. The invoices did not contain a buy out option or a provision to return the equipment to the lessor. The invoices were dated June through December 1989.

The air compressor was acquired on a Compu Rent lease agreement that required an advance payment of $1,574.60 and 10 monthly payments of $787.30. The agreement did not contain a buy out provision. The agreement was signed by Jump and dated May 15, 1990.

UCI recorded the payments for the equipment under "Lease Expense" on its ledgers. The useful life of the equipment

acquired as described above was substantially greater than the duration of the purported leases.

Northcutt's clerk prepared UCI's 1989 and 1990 tax returns based on the ledgers and invoices provided by UCI. Northcutt did not review the purported lease transactions that were entered into by UCI. Neither Northcutt nor her clerk verified the lease expenses as part of UCI's return preparation. Petitioner deducted the payments for the asset acquisitions as "Lease Expense" on its 1989 and 1990 tax returns in the aggregate amounts of $141,105 and $56,925, respectively. Northcutt reviewed and checked the returns before sending them to UCI for signature. Jump and Schubert each spent 5 to 10 minutes reviewing the Federal income tax returns after they were received from Northcutt. Schubert, as president of UCI, signed the returns in both 1989 and 1990.

## OPINION

Respondent determined that the lease expenses claimed by petitioner were capital expenses and disallowed the deductions. Petitioner has conceded the $68,587 and $33,638 deficiencies for 1989 and 1990, respectively. Petitioner argues, however, that it is not liable for the accuracy related penalties because there was substantial authority for its position on its tax returns and because petitioner's reliance on its accountant was reasonable and in good faith. Respondent contends that there is no substantial authority for petitioner's position on its tax

returns and that petitioner's accountant was not qualified to render tax advice. Petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Bixby v. Commissioner, 58 T.C. 757, 791 (1972).

Section 6662(a) imposes an accuracy related penalty of 20 percent on any portion of an underpayment of tax that is attributable to items set forth in section 6662(b). Section 6662(b)(2) specifies as one of those items "Any substantial understatement of income tax." An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $10,000. Sec. 6662(d)(1)(A) and (B). In calculating understatements under section 6662(b)(2), items for which there was substantial authority are not to be considered. Sec. 6662(d)(2)(B)(i). To determine whether the treatment of any portion of an understatement is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Antonides v. Commissioner, 91 T.C. 686, 700-704 (1988), affd. 893 F.2d 656 (4th Cir. 1990); sec. 1.6662-4(d)(3), Income Tax Regs.

Petitioner argues that the weight of authorities supports its position that the equipment was acquired by lease and not acquired in a disguised sale. Petitioner relies on Revenue Ruling 55-540, 1955-2 C.B. 39, and Benton v. Commissioner, 197

F.2d 745 (5th Cir. 1952), revg. a Memorandum Opinion of this Court dated Sept. 20, 1950, as authorities to support its position. Petitioner quotes Revenue Ruling 55-540, 1955-2 C.B. at 41, as follows:

> Whether an agreement, which in form is a lease, is in substance a conditional sales contract depends upon the intent of the parties as evidenced by the provisions of the agreement, read in the light of the facts and circumstances existing at the time the agreement was executed. In ascertaining such intent no single test, or any special combination of tests, is absolutely determinative. No general rule, applicable to all cases, can be laid down. Each case must be decided in the light of its particular facts. * * *

Petitioner concludes that, because there is no general rule on how to treat these arrangements, there is substantial authority to treat them as petitioner did on its returns. However, petitioner's recitation of Revenue Ruling 55-540 is incomplete. The ruling sets forth an "economic" test and continues as follows:

> However, from the decisions cited below, it would appear that in the absence of compelling persuasive factors of contrary implication an intent warranting treatment of a transaction for tax purposes as a purchase and sale rather than as a lease or rental agreement may in general be said to exist if, for example, one or more of the following conditions are present: [Id. at 41.]

The conditions following in the ruling that would indicate a sale include facts where: The lessee will acquire title upon the payment of a stated amount of "rentals", which under the contract he is required to make; the total amount that the lessee is required to pay for a relatively short period of use constitutes

an inordinately large proportion of the total sum required to be paid to secure the transfer of the title; and the property may be acquired under a purchase option at a price that is nominal in relation to the value of the property at the time when the option may be exercised, as determined at the time of entering into the original agreement, or at a price that is a relatively small amount when compared with the total payments that are required to be made.

The facts in this case fit squarely within the conditions set forth in the ruling:  the terms of the leases were substantially less than the life of the equipment, and UCI owned the equipment outright, either after a maximum of 10 payments or after exercising a nominal buy out option.  Rather than supporting petitioner's position, Revenue Ruling 55-540 is contrary to petitioner's position.

Petitioner relies on Benton v. Commissioner, supra, to support deducting all payments under short-term leases.  In Benton, the lease was for the purchase of automobiles to be used as taxicabs.  The 1945 lease required 10 payments of $5,000 with an option to purchase the automobiles for $35,000 at the end of the 10 months.  The Court of Appeals upheld the leases stating that, when the intent of the parties to a contract is determined, it must be determined in light of the facts and circumstances as they existed at the time the parties entered into the contract.

At the time the "leases" in dispute here were entered into, UCI intended to keep the equipment permanently. Northcutt testified at trial: "United Circuits was <u>buying</u> some equipment and we [Jump and Northcutt] discussed the possibility of a lease against depreciating it". (Emphasis added.) The documents transferring the equipment either had no provision for the return of the equipment to the "lessors" at the end of the required payments or the agreements offered a nominal buy out. Taking into account all of the relevant facts and circumstances, including the intent of the parties to the agreement at the time of the agreements, we conclude that agreements have the legal effect of a contract for sale. <u>Benton</u> is distinguishable and does not represent authority for petitioner's position.

Petitioner has failed to present any authority that supports petitioner's position on its tax returns. Under either the economic test of the revenue ruling or the intent test of <u>Benton</u> applied to the facts, the transactions were sales and not leases. Accordingly, petitioner cannot rely on the substantial authority exception to the substantial understatement penalty to avoid liability.

Petitioner also argues that it reasonably and in good faith relied on Northcutt, its accountant, to prepare its returns and, therefore, it should not be liable for the accuracy related penalty. The reasonable cause and good faith exception in section 6664(c) applies to both the substantial understatement

and negligence penalties in section 6662(a) and (b).  Section
1.6664-4, Income Tax Regs., states:

> Reasonable cause and good faith exception to section
> 6662 penalties.--(a) In general.  No penalty may be
> imposed under section 6662 with respect to an portion
> of an underpayment upon a showing by the taxpayer that
> there was reasonable cause for, and the taxpayer acted
> in good faith with respect to, such portion.  * * *
>
>     (b) Facts and circumstances taken into account.--
> (1) In general.  The determination of whether a
> taxpayer acted with reasonable cause and in good faith
> is made on a case-by-case basis, taking into account
> all pertinent facts and circumstances.  The most
> important factor is the extent of the taxpayer's effort
> to assess the taxpayer's proper liability.  * * *
> Reliance on * * * the advice of a professional (such as
> an appraiser, attorney or accountant) does not
> necessarily demonstrate reasonable cause and good
> faith.  Similarly, reasonable cause and good faith is
> not necessarily indicated by reliance on facts that,
> unknown to the taxpayer, are incorrect.  * * *

As a general rule, the responsibility of filing an accurate
return cannot be shifted by the taxpayer to a return preparer.
Metra Chem Corp. v. Commissioner, 88 T.C. 654, 662 (1987).
However, under certain circumstances, the taxpayer has been able
to avoid the imposition of a penalty if there was good faith
reliance by the taxpayer on the advice of a competent adviser.
Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864
F.2d 1521 (10th Cir. 1989).  To show good faith reliance on the
advice of a competent adviser, the taxpayer must at least
establish:  (1) That he or she provided the return preparer with
complete and accurate information; (2) that an incorrect return
was a result of the preparer's mistakes; and (3) that the

taxpayer believed in good faith that he was relying on the advice of a competent return preparer.  <u>Metra Chem Corp. v. Commissioner</u>, <u>supra</u>.

Petitioner relies on section 1.6664-4(b)(2), <u>Example</u> (<u>l</u>), Income Tax Regs., to establish good faith reliance:

> A, an individual calendar year taxpayer, engages B, a tax professional, to give him advice concerning the deductibility of certain state and local taxes.  A provides B with full details concerning the taxes at issue.  B advises A that the taxes are fully deductible.  A, in preparing his own tax return, claims a deduction for the taxes.  Under these facts, A is considered to have demonstrated good faith by seeking the advice of a tax professional, and to have shown reasonable cause for any underpayment attributable to the deduction claimed for the taxes.  However, if A had sought advice from someone that he knew, or should have known, lacked knowledge in federal income taxation, A would not be considered to have shown reasonable cause or to have acted in good faith.

Petitioner argues that it is not liable for the penalty because the facts in the instant case are the same as the facts in the example.  Petitioner's argument, however, is contradicted by the evidence.  Jump did not provide Northcutt with full details or complete and accurate information concerning the transactions in issue.  Northcutt testified that she did not see the agreements for the equipment acquisitions entered into by UCI.

In addition, Jump relied on Northcutt for "accounting" advice rather than for "tax" advice.  Jump testified:

> Q  In giving it [the question about the leases] to her, did you anticipate she would render tax advice?

A  I guess we were looking at it more as accounting advice than strictly tax advice.

Q  So your reliance on Ms. Northcutt for these lease expenses goes to the question of accounting as opposed to tax return preparation?

A  Having never been involved in an audit or anything, we're more aware of it now but at the time, no, we were concerned with accounting and the company. We really didn't give much thought to being audited or the IRS.  We do now.

Northcutt's return preparation consisted of transferring the information in petitioner's ledgers to an income tax form without verifying the validity of the entries in the ledger.  Jump did not inquire about the tax consequences of the transactions entered into by petitioners and did not receive advice on the tax consequences.  Jump, by his own admission, did not rely on Northcutt to render tax advice.  Moreover, Jump did not follow her advice as to the characteristics of a "legitimate" lease, because two of the five purported leases' payment terms were for a duration of less than 1 year.  Petitioner has failed to establish good faith reliance on the advice of a competent tax adviser.

Respondent also determined that petitioner was liable for an accuracy related penalty because the understatement was due to negligence.  Petitioner argues that it is not liable for the negligence penalty because it relied on its accountant.  For the reasons set forth above, we are not persuaded by petitioner's argument.

Petitioner has failed to meet its burden of proof to avoid the accuracy related penalties.  Accordingly, respondent's determination will be sustained.

<u>Decision will be entered for respondent</u>.